KIM RONALD BROOKS,

          **Plaintiff,**

    **-vs-**                        **Case No.  6:08-cv-928-Orl-31GJK**

COMMISSIONER OF SOCIAL SECURITY,

          **Defendant.**

_____

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

      Plaintiff Kim Ronald Brooks (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits.  *See* Doc. No. 1.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

## I.    <u>BACKGROUND</u>

      Claimant was born on January 28, 1954, and he attended high school through the tenth grade.  R. 38, 59, 61, 112.  Claimant's past employment experience includes working as an engine engineer and repairing tug boat engines as a merchant marine from 1990-1999.  R. 38, 126, 131.   Claimant last physically worked repairing tug boat engines on September 15, 1999.  R. 39-40.[1]  On September 15, 1999, Claimant was working on a tug boat three hundred miles off

---

[1] Although unable to physically work after September 15, 1999, Claimant received his regular salary until December 7, 2001, and a lump sum settlement recovery on December 6, 2001.  R. 39-40, 101.

the coast of Jacksonville, Florida when the tug boat sank during Hurricane Floyd.  R. 41, 294.

Claimant was rescued by an aircraft carrier, but suffered an acute burst fracture at the T12

vertebrae.  R. 41, 194. Claimant alleges an onset of disability as of September 15, 1999.  R. 100,

112.  On or about May 22, 2006, Claimant filed the present application for a period of disability

and disability insurance benefits.  R. 100, 112.[2]  Claimant remained insured through December

31, 2005.  R. 18.

     Claimant's application was denied initially and upon reconsideration.  R. 71-75.  On

November 15, 2006, Claimant requested a hearing before an Administrative Law Judge (the

"ALJ") and, on October 22, 2007, a hearing was held before the Honorable JoAnn Anderson.  R.

80, 28-58.

     At the hearing, Claimant was represented by Richard Swartz, Esq.  R. 28.  Claimant and a

Vocational Expert, Robert Bradley (the "VE"), testified at the hearing.  R. 28-58.  Claimant

testified to the following in pertinent part:

- He fractured his back when the tug boat sank;

- He experiences pain all the time;

- The pain feels like a knot and is a steady ache;

- The pain goes from the T12 vertebrae to the below his belt line;

- His pain averages a six or seven on a scale of 1 to 10;

---

[2] There is a discrepancy in the record regarding the date Claimant filed his application, but it is immaterial to the issues raised on appeal.  Claimant and the Commissioner both state that Claimant filed his application on July 19, 2007.  Doc. Nos. 12 at 2, 14 at 1.  The Administrative Law Judge states that Claimant filed his application on May 19, 2006.  R. 16.  The application in the record is dated July 19, 2007, but states it was completed on May 22, 2006. R. 112.  On November 15, 2006, Claimant requested a hearing before an Administrative Law Judge.  R. 80. Therefore, it appears the application was filed prior to the Fall of 2006 and the date referenced in the parties' briefs is incorrect.

- The weather affects his pain;

- He takes Loratab and Soma for the pain, but does not have any side effects;

- The pain is at a level 6 or 7 even when he takes the pain medication, but the medication does help;

- He has difficulty sleeping;

- He can drive a motor vehicle, but not for long distances;

- He is currently being treated by Dr. Dorvil;

- He was never been treated by and never met Dr. Zwolinski, but did receive treatment from Dr. Zwolinski's physician's assistant, Steve Tuscano;

- He can sit for 30 minutes at time, but sometimes only 10 minutes at a time;

- On a good day, he can stand for 30 to 40 minutes at a time. On a bad day, he cannot get out of bed. He is unable to get out of bed four or five days a month;

- He enjoys walking and he can walk about 20 minutes before having to rest;

- He cannot lift anything more than ten pounds;

- He watches television, prepares microwave meals, and can use a can opener;

- He enjoys visiting with friends, but he does not go out;

- He enjoys doing small repairs, such as fixing lamp's and using his hands;

- He does not have any numbness in his legs; and

- He does not wear a brace.

R. 28-52. The VE testified regarding the Claimant's prior work history, but the ALJ did not pose any hypothetical questions to the VE and did not solicit any other testimony from the VE. R. 53-57.

On January 24, 2008, the ALJ issued an unfavorable opinion finding Claimant not disabled. R. 16-24. In her decision, the ALJ made the following pertinent findings:

1. Claimant last met the insured status requirements of the Social Security Act on December 31, 2005;

2. Claimant did not engage in substantial gainful activity during the period from his alleged onset date of September 15, 1999 through his date last insured of December 31, 2005;

3. Claimant has the following severe combination of impairments: history of T12 busrt fracture and degenerative disc disease of the lumbar spine;

4. Through the date last insured, Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the Claimant had the residual functional capacity ("RFC") to perform the full range of light work;

6. Through the date last insured, the Claimant was unable to perform past relevant work;

7. Claimant was born on January 28, 1954 and was 45 years old, which is defined as a younger individual age 18-49, on his alleged onset date. As of his date last insured, he was 51 years of age, defined as closely approaching advanced age;

8. Claimant has a limited education and is able to communicate in English;

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the Claimant has transferable job skills;

10. Through the date last insured, considering the Claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the Claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11. The Claimant was not under a disability as defined in the Social Security Act, at any time from September 15, 1999, the alleged onset date, through December 31, 2005, the date last insured.

R. 16-24. In the decision, the ALJ stated that at step two of the five-step sequential evaluation process he must determine "whether the [C]laimant has a medically determinable impairment

that is 'severe' or a combination of impairments that is 'severe.'" R. 17. The ALJ stated that 20 CFR § 404.1521 provides that "[a]n impairment or combination of impairments is 'severe' . . . if it significantly limits an individual's ability to perform basic work activities." *Id.* (emphasis added). As set forth above, the ALJ determined that Claimant has a combination of severe impairments, namely a history of a burst fracture at the T12 vertebrae and degenerative disc disease of the lumbar spine. R. 18. In reaching her determination at step-two of the sequential process, the ALJ reviewed the entire medical record, including an April 2000 examination where Claimant stated that he had "no pain." R. 19-20.

At step-four of the sequential process, the ALJ determined Claimant's RFC. R. 17, 20-22. The ALJ stated that in making this determination he considered "all of the [C]laimant's impairments, including impairments that are not severe," and he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . ." R. 17, 20. At step-four, the ALJ specifically considered Claimant's subjective complaints of pain and concluded that Claimant's medically determinable impairments could reasonably be expected to produce Claimant's alleged symptoms, but Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. 21.

> The undersigned finds the [C]laimant's allegations regarding his symptoms and limitations not credible to the extent he claims he is precluded from all work activity. The objective medical evidence in the record fails to establish an underlying medical condition that could reasonably be expected to produce incapacitating pain.

R. 21-22.

At step-five of the sequential process and after finding that Claimant's impairments

precluded him from performing past relevant work, the ALJ determined that based on Claimant's age, education, work experience, and RFC there were jobs that existed in significant numbers in the national economy that the Claimant could perform. R. 23. The ALJ stated the following in pertinent part:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the [C]laimant's [RFC], age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the [C]laimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the [C]laimant's specific vocational profile (SSR 83-11). When the [C]laimant cannot perform substantially all of the exertional demands of work at a given level of exertion <u>or has nonexertional limitations, the medical-vocational rules are used as a framework for decision making</u> unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the [C]laimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15).
>
> <u>Based on a [RFC] for the full range of light work, the undersigned concludes that, through the date last insured, considering the [C]laimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rules 202.18 and 202.11</u>.

R. 23 (emphasis added). Thus, the ALJ relied on the Medical-Vocational Rules (the "Grids") rather than testimony from the VE.

Regarding the treatment records from Dr. Dorvil, the ALJ stated following:

> The [C]laimant was seen by Deborah Dorvil, M.D., in July 2007. He complained of continued back pain. On physical examination, the [C]laimant had no tenderness, masses or effusions in his back. He had a normal gait and station and full range of motion in his back. The clinical assessment was chronic back pain and tobacoism. He was given a prescription for pain medication. On

follow-up in August 2007, the [C]laimant had undergone a lumbar spine x-ray that showed a mild degree of lumbar spondylosis, mild osteopenia, and no evidence of instability on flexion and extension views. A thoracic spine x-ray showed a compression fracture of T6 with loss of 10 to 20% of height of indeterminate age. Dr. Dorvil indicated that a bone scan had also been normal.

R. 20. Claimant did not present an opinion from Dr. Dorvil for the ALJ to consider.

Regarding Dr. Gillespy, another treating physician, the ALJ stated the following:

[I]n April 2000, the [C]laimant indicated that he had no pain, slight hamstring tenderness, increased flexibility and increased endurance. Dr. Gillespy indicated that the [C]laimant had reached maximum medical improvement. He had a permanent partial impairment rating of 5 percent of the whole person. He found that the [C]laimant had restrictions of no lifting greater than 30 pounds. He further indicated that the [C]laimant was able to sit, stand, and walk for an 8 hour day. He was able to bend, squat and climb, and reach above shoulder level. The [C]laimant was able to use both his upper extremities for simple grasping, pushing, pulling and fine manipulation. He was able to use his feet for repetitive movements.

. . .

When seen by Dr. Gillespy in September 2001, the [C]laimant complained of pain across the lower thoracic, upper lumbar region. He denied any leg pain. The [C]laimant indicated that he was active in doing exercises and doing a lot of walking at home. After an examination, the clinical impression was T12 burst fracture, healed, and L5-S1 pre-existing degenerative disc disease and osteoarthritis. Dr. Gillespy indicated that the [C]laimant could continue to work at a modified duty with no lifting greater than 30 pounds.

R. 19. In determining Claimant's RFC, the ALJ afforded significant weight to the opinions of Dr. Gillespy "because [they are] consistent with the [C]laimant's treatment records." R. 22.

On February 19, 2008, Claimant requested review of the ALJ's decision before the Appeals Council. R. 10. On March 21, 2008, Claimant presented three arguments to the Appeals Council. R. 6-12. First, Claimant alleged the ALJ erred by applying an incorrect legal

standard in evaluating his pain. R. 6-7. Second, Claimant argued the ALJ applied an incorrect legal standard in evaluating the medical opinions of Dr. Zwolinski. R. 7. Finally, Claimant submitted new evidence, consisting of a February 26, 2008, questionnaire completed by Claimant's treating physician, Dr. Dorvil, and argued that said evidence mandated review by the Appeals Council. R. 6-9. The questionnaire reported Claimant's symptoms and asked Dr. Dorvil to check a "yes" or "no" box for each symptom listed. R. 9. Although some of the answers were changed, it is clear Dr. Dorvil agreed with Claimant's contention he is totally disabled. *Id.* On April 29, 2008, the Appeals Council denied review stating that it had "considered the reasons you disagree with the decision and the additional evidence . . . [but] [w]e found that this information does not provide a basis for changing the [ALJ's] decision." R. 2-3. On June 9, 2008, Claimant timely filed an appeal in this Court. Doc. No. 1. On September 5, 2008, Claimant filed a memorandum in support of his position on appeal. Doc. No. 12. On November 3, 2008, the Commissioner filed a memorandum in support of the Commissioner's final determination. Doc. No. 14. The appeal is now ripe for review.

## II.    **THE PARTIES' POSITIONS**

Claimant assigns two errors to the Commissioner's decision: 1) the ALJ erred as a matter of law by using the Grids rather than eliciting testimony from the VE (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 2002)); and 2) the Appeals Council erred by not addressing any of the arguments Claimant raised on appeal (Doc. No. 12 at 13) and did not apply the correct legal standard when denying Claimant's request for review because it failed to provide the Court with sufficient reasoning for discounting Claimant's arguments on review and

did not state the weight given to the additional evidence (citing *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1258 (11th Cir. 2007)). Doc. No. 12 at 1-21. Claimant requests that the Court reverse the Commissioner's decision or, in the alternative, remand the case for a de novo rehearing. Doc. No. 12 at 3.

The Commissioner argues that substantial evidence supports his decision to deny Claimant's claims for a period of disability and disability insurance benefits. Doc. No. 14 at 3-9. The Commissioner maintains that: 1) the ALJ properly relied on the Grids because she "concluded [Claimant] could perform unlimited types of work at the light level despite any exertional limitations, and she then properly concluded Plaintiff had no nonexertional limitations that affected his ability to work" (Doc. No. 14 at 18); and 2) the Appeals Council articulated the proper legal standard under which it denied Claimant's request for review and the Appeals Council was not required to include a detailed analysis of the new evidence (citing *Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006); *Hollar v. Commissioner of Social Security*, 1999 WL 753999 at *1 (4th Cir. 1999); *Higginbotham v. Barnhart*, 405 F.3d 332, 335 n. 1 (5th Cir. 2005). Doc. No. 14 at 1-22. Therefore, the Commissioner maintains the Court should affirm the decision below.

## III. DRS. DORVIL AND GILLESPY'S TREATMENT RECORDS

### A. Dr. Gillespy

On February 29, 2000, Claimant presented to Dr. Gillespy for an initial evaluation. R. 296. Dr. Gillespy's September 10, 2001, treatment records reveal the following history:

> Patient states that while working a merchant marine on September 15, 1999, his boat sank during Hurricane Floyd off Jacksonville.

Patient states that he injured his lower back while in a lifeboat. He was sandwiched between a raft and the boat. Patient complains of immediate [pain in the] lumbar spine at that time. Patient states that he was examined one the John F. Kennedy and then taken to Jacksonville Emergency Room for further evaluation. Patient followed up in the office with Dr. Gottlich. . . . Patient was scheduled to have an MRI scan at Halifax Medical Center which he did have, and had brought with him for doctor's review. Date of MRI scan was September 21, 1999. Patient was diagnosed with an acute T12 burst fracture and prescribed a Jewett brace by Dr. Gottlich. Patient states, "Things did not go well with Dr. Gottlich." Patient then switched care to Dr. Sridhar. He states that Dr. Sridhar told him "everything was okay" and that he could go back to work. Patient states that he went to Health South for physical therapy. He states that he also switched his soft mattress to a firm mattress. Patient states that he did take a trip to Deland . . . in his car and, because of the bumpy ride, his back pain flared up and increased. Patient states that he did have to go to Halifax Medical Center Emergency room on Thursday, February 24, 2000, secondary to severe pain. Patient states that he was prescribed 10 Lortab pills for pain at this time.

Patient was last seen in the office on April 6, 2000. He was given a maximum medical improvement at that time as well as a permanent disability rating of 5%, returned to work with lifting restrictions of no greater than 30 pounds, and he was discharged from care.

Today patient states he's had no further treatment or follow-up since he was last seen here. He states that he has not returned to work as of yet. He currently is complaining of pain across the lower thoracic upper lumbar region. At times it is severe pain. Patient denies any leg pains. He states that he is active in doing exercises and doing a lot of walking at home. He currently complains of difficulty riding his motorcycle and his riding lawn mower, secondary to pain.

R. 296. Upon physical examination, Dr. Gillespy's records reveal:

Thoracic/lumbar spine flexion is to 80 degrees, extension is to 20 degrees. Deep tendon reflexes are + ¼ equal bilaterally of the patellas. 0-1/4 equal bilaterally of the Achilles. Motor [strength] +5/5 equal bilaterally to the different myotomes of the lower extremities. Negative tension signs to the lower extremities.

> Negative sitting root test bilaterally, negative straight leg raising
> test bilaterally.

R. 298.  X-rays showed no change and were "satisfactory." R. 298.  Dr. Gillespy's impression

was that the burst fracture had healed and Claimant continued to suffer from "L5-S1 pre-existing

degenerative disc disease and osteoarthritis." R. 298.  Dr. Gillespy's opined that Claimant "may

continue to work at modified duty, with no lifting greater than 30 pounds." R. 298.  Dr. Gillespy

further stated that Claimant's date of maximum medical improvement remained April 6, 2000

and that he retained a permanent partial impairment rating of 5 percent. R. 298.  Dr. Gillespy

concluded that Claimant was to follow up only on as "as needed" basis. R. 298-299.

### B.  Dr. Dorvil

On July 10, 2007, Claimant presented to Dr. Dorvil for an initial evaluation complaining

of chronic back pain.  R. 294.  A review of Claimant's systems revealed no blurry vision, no

shortness of breath, no chest pain, and "no chronic back pain." R. 294.  Upon physical

examination, Claimant was in no acute distress and there was no tenderness, masses, or effusions

in his back.  R. 295.  Claimant' gait and station were normal and he had full range of motion in

his back.  R. 295.  Claimant stated that he was awaiting recent x-ray results taken from of his

back.  R. 295.  Dr. Dorvil provided Claimant with refill prescriptions of Lortab and scheduled a

follow-up appointment.  R. 295.

On August 8, 2007, Claimant presented to Dr. Dorvil for a follow-up appointment.  R.

292-93.  Dr. Dorvil reviewed the x-ray images with Claimant showing:

> He had a lumbar spine x-ray done that showed a mild degree of
> lumbar spondylosis, mild osteopenia, and no evidence of instability
> on flexion and extension views.  He had a bone scan done that was
> normal and MRI of the lumbar spine that showed a compression
> fracture involving the T12 with loss of 80 to 90% height and mild

> marrow edema. He also had some diffuse disc bulges extending
> into the bilateral neural foramina, causing mild to moderate
> inferior neural foraminal stenosis and abutting the nerve roots
> along the inferior aspect. I also reviewed his thoracic spine x-ray
> with him that showed a compression fracture of the T6 with loss of
> 10 to 20% of height of indeterminate age.

R. 292. Upon physical examination, Claimant was able to move all extremities and had a normal

gait. R. 293. Dr. Dorvil's assessment was chronic back pain secondary to lumbar radiculopathy

and disc herniations. R. 293. The record shows that Claimant called Dr. Dorvil prescription

refills, but there are no other records from Dr. Dorvil except for the questionnaire described

above. R. 9, 293.

## IV.   LEGAL STANDARDS

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has

established a five-step sequential evaluation process for determining whether an individual is

disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is

determined that the claimant is or is not disabled at a step of the evaluation process, the

evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial

gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is

defined as work activity that is both substantial and gainful. "Substantial work activity" is work

activity that involves performing significant physical or mental activities. 20 CFR §§

404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or

profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an

individual has earnings from employment or self-employment above a specific level set out in

12

the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 CFR § 404.1521. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider

properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security

Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the

national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

## B.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

## V.   ANALYSIS OF ALLEGED ERRORS

### A.  Whether the ALJ Erred by Relying on the Grids

This case presents the recurring issue of whether the ALJ may rely exclusively on the

Grids for a disability decision, or whether testimony from a VE is required. The decision in

*Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995), is instructive on the law:

> Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do. . . . The Secretary bears the burden of establishing that Appellant, who could not perform her past work, could perform alternative work in the national economy. Although this burden can sometimes be met through straightforward application of the Medical-Vocational Guidelines (the "grids"), the regulations regarding the implementation of the grids caution that they are only applicable under certain conditions. For example, the claimant must suffer primarily from an exertional impairment, without significant non-exertional factors. . . . Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements). . . . <u>Pain is a nonexertional impairment</u>. . . . <u>Exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities</u>. . . . If the grids are inapplicable, the Secretary must seek expert vocational testimony. Normally, when nonexertional limitations are alleged, "the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert." *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). . . . <u>The ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations</u>.

*Id.* at 1559 (internal quotations omitted) (emphasis added). In *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004), the Eleventh Circuit held that "'[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Id.* (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir.1985)) (citing *Broz v. Schweiker*, 677 F.2d 1351, 1361 (11th Cir.1982); *Broz v. Heckler*, 711 F.2d 957 (11th Cir.1983); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999); *Wolfe v. Chater*, 86 F.3d

1072, 1077 (11th Cir.1996); *Martin v. R.R. Ret. Bd.*, 935 F.2d 230, 234 (11th Cir.1991); *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir.1987); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir.1985)) (emphasis in original). Thus, an ALJ is required to make a finding regarding whether Claimant has nonexertional limitations and, if so, whether those limitations are severe enough to preclude a wide range of employment at a given level. *Id.*

> If the ALJ determines that [Claimant's] nonexertional limitations do not significantly limit her basic work skills at the sedentary work level, then the ALJ may rely on the grids to determine if Phillips is disabled. If, however, the ALJ determines that [Claimant's] nonexertional limitations significantly limit her basic work skills at the sedentary work level, then the ALJ must consult a vocational expert.

*Phillips*, 357 F.3d at 1243 (emphasis added). The Eleventh Circuit has stated that an ALJ's RFC determination only considers exertional limitations. *See Syrock*, 764 F.2d at 836.

Claimant argues that the ALJ erred as a matter of law by relying on the Grids rather than obtaining testimony from a VE. Doc. No. 12 at 14-20. The Commissioner maintains that the ALJ properly relied on the Grids because "she concluded Claimant could perform unlimited types of work at the light level despite any exertional limitation, and she then properly concluded [Claimant] had no nonexertional limitations that affected his ability to work." Doc. No. 14 at 18 (emphasis added). The Commissioner is correct, although sequentially out of order. At step-five of the sequential process the ALJ did not make a specific finding regarding whether Claimant has nonexertional limitations or whether any such nonexertional limitations affect his ability to work. *See* R. 23. However, the ALJ made a specific finding as to whether Claimant's non-exertional limitations significantly affect his ability to perform basic work activities at step-two of the sequential process. *See* R. 18-19. During step-two, the ALJ determined whether

Claimant had any impairment or combinations of impairments that were severe. *See* R. 17. As set forth above, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. *See* 20 CFR § 404.1521. The ALJ did not find Claimant's pain to be a severe impairment. *See* R. 18-20. Moreover, the ALJ specifically considered and rejected Claimant's subjective complaints of pain at step-four when he determined Claimant's RFC. *See* R. 20-22.[3] The ALJ specifically found that Claimant's nonexertional limitations do not significantly affect his ability to do basic work skills. Thus, the undersigned recommends that the Court find the ALJ did not err by relying on the Grids. *See Perry v. Astrue*, 280 Fed.Appx. 887, 893-96 (11th Cir. 2008) (holding that at steps two and four the ALJ considered whether claimant's nonexertional limitations significantly affected his ability to do basic work skills and, therefore, the ALJ did not err by utilizing the Grids).

### B. Whether the Appeals Council Erred By Denying Claimant's Request For Review

As set forth above, after the ALJ issued her decision, Claimant appealed to the Appeals Council presenting several arguments and new evidence consisting of a questionnaire from Claimant's current treating physician, Dr. Dorvil. R. 9. The Appeals Council subsequently denied review of the ALJ's decision. R. 2-5. Claimant argues that the Appeals Council erred because it failed to consider Claimant's arguments and erred as a matter of law because it "failed to provide this Court with sufficient reasoning to enable the [C]ourt to determine that the Commissioner correctly applied the law in denying [Claimant's] request for review." Doc. No. 12 at 12. As set forth above, in its decision denying review of the ALJ's determination, the Appeals Council specifically stated that it "considered the reasons you disagree with the decision

---

[3] Generally, an RFC determination only considers exertional limitations. *See Syrock*, 764 F.2d at 836. However, in this case, it is clear that the ALJ considered both exertional and nonexertional limitations in determining Claimant's RFC. *See* R. 20-22.

and the additional evidence", but "found that this information does not provide a basis for changing the [ALJ's] decision." R. 2-3. Therefore, the record does not support Claimant's contention that the Appeals Council failed to consider the arguments and evidence presented to it. Accordingly, it is recommended that the Court reject that argument.

Claimant also argues the Appeals Council erred as a matter of law by failing to articulate a basis for its decision so as to allow the Court to conduct a meaningful review. Doc. No. 12 at 12. In *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1259, 1262 (11th Cir. 2007), the Eleventh Circuit found that a nearly identical statement by the Appeals Council was sufficient to show that the Appeals Council had considered the new evidence and found no basis to review the ALJ's decision. *Id*. Thus, the undersigned recommends that the Court find the Appeals Council did not err by failing to provide a more detailed analysis of its reasoning not to review the ALJ's decision.

In *Ingram*, 496 F.3d at 1262, the Eleventh Circuit held that when new evidence is presented for the first time to the Appeals Council, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Id*. The undersigned has carefully reviewed the entire record and concludes that Dr. Dorvil's questionnaire does not render the denial of benefits erroneous. Dr. Dorvil's treatment notes (R. 291-95) do not support the conclusion drawn from her questionnaire that Claimant is totally disabled (R. 9). *See Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986) (The ALJ may reject any medical opinion, including the opinion of a treating physician, if the evidence supports a contrary finding); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (Good cause exists to discount the opinions of a treating physician if the opinion is conclusory or inconsistent with doctor's own records). In

addition, Dr. Dorvil's opinion is inconsistent with the treatment records and the opinions of Dr. Gillespy, who opined that Claimant could return to at modified duty.  *See* R. 296-99.   The ALJ afforded Dr. Gillespy's opinions significant weight.   R. 22.   Thus, the undersigned further recommends that the Court find the new evidence does not render the denial of benefits erroneous.

## VI.   <u>CONCLUSION</u>

Based on the above stated reasons, the undersigned **RECOMMENDS** that the Court:

1)   **AFFIRM** the final decision of the Commissioner;

2)   Direct the Clerk to enter a separate judgment in favor of the Commissioner; and

3)   Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on June 25, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Richard A. Culberston
3222 Corrine Drive, Suite E
Orlando, FL 32803

Susan R. Waldron
U.S. Attorney's Office
Suite 3200

400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Richard V. Blake, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920


The Honorable JoAnn Anderson
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224